# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

Emily Robinson                                   Case No. _____

        Plaintiff,

vs.                                                              **COMPLAINT**

UnitedHeathcare Insurance Company,

        Defendant.

_____

Plaintiff, Emily Robinson, for her Complaint, states and alleges as follows:

## JURISDICTION AND VENUE

1.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., and principles of federal common law developed thereunder.

2.     This Court has jurisdiction of this action pursuant to 29 U.S.C. § 1132(e)(1), ERISA § 502(e)(1).

3.     Venue is proper in this district under 29 U.S.C. § 1132(e)(2), ERISA § 502(e)(2), because the case involves an employee benefit plan administered in this district and the Defendant does business in this district.

## PARTIES

4.     Plaintiff Emily Robinson ("Robinson" or "Plaintiff") is a 21-year-old individual who resides in St. Paul, Minnesota.

1

5.      Robinson was insured through a group health care policy, "UnitedHealthcare Choice Plus," which was offered and underwritten by UnitedHealthcare Insurance Company ("UnitedHealthcare or "Defendant").

6.      The health care policy is an employer-sponsored welfare benefits plan within the context of, and governed by, ERISA.  The plan sponsor and plan administrator is Insperity Holdings, Inc.

7.      Defendant UnitedHealthcare is a Connecticut corporation, headquartered in Hartford, Connecticut, and is licensed to do and does business in the State of Minnesota.

### RELEVANT POLICY PROVISIONS

8.      During relevant time periods, Robinson was insured under the health care policy as a dependent of Scott Robinson who was an employee of Insperity Holdings, Inc.

9.      Coverage under the policy includes substance use disorder services. Substance use disorder services include those received on an inpatient or Intermediate Care basis in a Hospital or an Alternate Facility, and those received on an outpatient basis in a provider's office or at an Alternate Facility.  Substance use disorder services include services for chemical dependency as required by Texas state law and/or regulation.

10.     Benefits for substance use disorder services include:  substance use disorder and chemical dependency evaluations and assessment; diagnosis; treatment planning; detoxification; inpatient; partial hospitalization/day treatment; intensive outpatient treatment; services at a Residential Treatment Facility; referral services; medication management; short-term individual, family and group therapeutic services; and crisis

2

intervention.

11.     Coverage under the policy includes mental health services.  Mental health services include those received on an inpatient or Intermediate Care Basis in a hospital or an Alternate Facility.

12.     Benefits for mental health services include mental health evaluations and assessment; diagnosis; treatment planning; referral services; medication management; inpatient; partial hospitalization/day treatment; intensive outpatient treatment; services at a Residential Treatment Facility; individual, family and group therapeutic services; and crisis intervention.

13.      The policy excludes certain substance use disorder and mental health services, including services or supplies, in Defendant's reasonable judgment, that are any of the following:

- Not consistent with generally accepted standards of medical practice for the treatment of such conditions;

- Not consistent with services backed by credible research soundly demonstrating that the services or supplies will have a measureable and beneficial health outcome, and therefore considered experimental;

- Typically do not result in outcomes demonstrably better than other available treatment alternatives that are less intensive or more cost effective;

- Typically do not result in outcomes demonstrably better than other available treatment alternatives that are less intensive or more cost effective;

- Not consistent with Defendant's level of care guidelines or best practices as modified from time to time;

3

- Not clinically appropriate in terms of type, frequency, extent, site and duration of treatment, and considered ineffective for the patient's mental illness, substance use disorder or condition based on generally accepted standards of medical practice and benchmarks.

14.     The policy provides that if covered health services are not available from a network provider, a claimant may be eligible for network benefits for services received from non-network providers.

15.     Defendant has the ability, but not discretionary authority, to interpret benefits and other terms, limitations and exclusions and to make factual determinations relating to benefits.  The policy was amended to remove discretionary clause provisions.

16.      Defendant has the ability to delegate its authority to other persons or entities that may provide administrative services for the benefit plan.

17.     The health care policy provides for two levels of appeal for both pre-service and post-service claims.

18.     The appeal process may include an urgent appeal if a delay in treatment could significantly increase the risk to a claimant's health, the ability to regain maximum function, or cause severe pain.

19.     A Coverage Determination Guideline for the treatment of Substance Use Disorders provided by Defendant as part of the claim file for Plaintiff's claims provide level of care criteria.

20.     The Guideline provides that the choice of the most appropriate treatment setting should take into consideration whether

- The proposed level of care is available;

4

- The proposed level of care is structured and intensive enough to safely and adequately treat the member's presenting problem and support the member's recovery/resiliency;

- It is likely that evidence-based treatment delivered in the proposed level of care will improve the member's presenting problems within a reasonable period of time.

21.     The Guideline provides that the admission criteria for Residential Rehabilitation is:

- The member's use of alcohol or drugs is heavy and continuous, and is associated with either of the following:

  o     Current symptoms of moderate withdrawal that require monitoring and management;

  o     Emerging symptoms or a history of use which indicates that moderate withdrawal is imminent and requires monitoring and management; or

- A Clinical Institute Withdrawal Assessment Scale score of 8 to 15; or

- The member has a co-occurring medical disorder or mental health condition which complicates ambulatory detoxification to the extent that detoxification in a Residential Treatment Center is necessary.

- The member is not at imminent risk of harm to self or others.

## FACTUAL ALLEGATIONS

22.     Robinson began having symptoms of depression in 2009.  Her treatment initially consisted of twice a month therapy sessions with a psychologist and monthly appointments with a medication provider.  Later she attended weekly and often twice weekly psychotherapy sessions with the primary provider along with weekly sessions with the family therapist and monthly appointments with a psychiatrist.

5

23.     In approximately 2009, Robinson began abusing alcohol.

24.     In 2010 Robinson entered a full-day partial hospitalization at Fairview Riverside for one month due to her depression.  Her lack of improvement resulted in a week long inpatient hospital stay at Fairview Riverside for stabilization.  She continued with weekly and sometimes twice weekly appointments with a psychologist specializing in DBT therapy.  She also joined a young adult DVT group for weekly meetings for additional support during the summers of 2011 and 2012.

25.     In the fall of 2011, Robinson began attending college at University of Wisconsin Madison.  While there, she had weekly psychotherapy sessions and continued with medications.

26.     Beginning in April 2012, she began consuming 8-10 drinks per day.

27.     Robinson carried the diagnoses of major depressive disorder, seasonal affective disorder, social anxiety disorder, cannabis abuse, alcohol dependence, nicotine dependence, eating disorder and self injurious behavior (cutting and burning).

28.     Robinson's substance use began impacting every area of her life including poor school performance, inadequate food intake, sleep disorder, problematic family relationships, social isolation, being fired from jobs.

29.     Due to significant interpersonal family conflict, Robinson's parents would not allow her to stay at their home beginning in December 2012.

30.     Robinson also eventually became homeless.

31.    In early 2013, Robinson was struggling with extreme anxiety, depression, sleep problems and substance use abuse.  Robinson's symptoms became so extreme that she found herself unable to leave her dorm room.

32.    Due to her medical conditions, she withdrew from college in the spring of 2013.

33.    On March 8, 2013, Robinson entered treatment at Timberline Knolls, a Network provider, to address her depression and anxiety and substance use abuse.

34.    Prior to her stay, Robinson's mother was informed by both Defendant and Timberline Knolls that they believed Robinson's care would be covered under the health care policy.

35.    UnitedHealthcare approved and covered Robinson's residential level treatment at Timberline Knolls from March 8, 2013 to April 2, 2013.

36.    Timberline Knolls' estimated length of required stay was eight weeks.

37.    On the initial treatment report, Timberline Knolls provided diagnoses of major depressive disorder, alcohol dependence, restless leg syndrome, delayed onset sleep syndrome, and problems with primary support group and social environment.  Her GAF rating was 30 to 39.

38.    Defendant denied and overturned its denial of Robinson's claim for residential level of care at Timberline Knolls several times.  Defendant's decision to overturn its denial on March 13, 2013, explains that coverage should be provided because the patient has failed the lower level of care in the past requiring an inpatient admission, does not have an adequate, safe support system, complicating issues with an eating

disorder history and current mood symptoms and increasing substance abuse, in spite of previous treatment, that is decreasing her level of functioning as evidenced by her decrease in activities of daily living and withdrawal from school.

39.     Defendant refused to pay for residential care treatment beyond April 2, 2013.

40.     Robinson decided to leave Timberline Knolls early as a result of Defendant's denial, as she was concerned and anxious over the cost of the program if she continued.

41.     Timberline Knolls required a three-day notice prior to leaving the facility early. Therefore, Robinson was not covered for her expenses from April 3 through April 6, 2013.

42.     Defendant informed Timberline Knolls of the termination of the benefit.

43.     A review was requested by Timberline Knolls.

44.     A letter dated April 4, 2013, giving formal notice of the termination of the benefit, was issued by Malik Ahmed, M.D.

45.     This letter was not received by Plaintiff for several days after April 4, 2013. Plaintiff did not receive the letter until after the decision on review had been completed.

46.     The April 4, 2013, letter reasoned that Plaintiff was not entitled to benefits after April 3, 2013, because she did not have any type of behavioral disturbance due to her substance abuse that required continued care, monitoring, supervision and containment by qualified personnel over a 24-hour period.

47.     A decision on the review requested by Timberline Knolls was sent by Sherifa Iqbal, M.D.. dated April 5, 2013, the same physician who had previously approved the treatment.  Dr. Iqbal reasoned that Robinson was progressing with her treatment, did not have any withdrawal or medical issues, and was not a danger to herself or others.

48.     Dr. Iqbal explained that Defendant's Level of Care Guideline provides that Residential Rehabilitation of substance use disorders is driven by the dominance of substance use in the patient's daily life and by the absence of a support system and a safe substance-free environment.

49.     Dr. Iqbal further stated that additional considerations that are determinative include:  a history of continued and severe substance use despite appropriate motivation and recent treatment in an IOP or a partial hospitalization program; pervasive impairment and functioning due to continued and severe substance use; the risk of exacerbation of medical conditions due to continued substance use; or severe impairment in the patient's family or social support system such that the patient is likely to use substances if not in 24-hour care.

50.     After leaving Timberline Knolls on April 6, 2013, Robinson immediately began abusing alcohol again.

51.     From April to June, Robinson was living for free with one of her friends, but in June her friend asked her to leave because she was concerned about her excessive drinking and wanted her to go to treatment.

52.     Robinson was drinking approximately 15 drinks a day.  Her weekly therapy and attendance at AA meetings were not helping.

53.     Robinson again decided to seek help at Timberline Knolls in July 2013 because of her pervasive and unmanageable depression and anxiety and substance use abuse.

54.     Early in the morning on July 4, 2013, Robinson pleaded with her parents to help her arrange financing for another stay at Timberline Knolls.  Robinson was already in an intoxicated state and informed her parents that she had two bottles of vodka in front of her that she planned to finish off "straight up" along with any all liquor she could get her hands on until her check-in time.

55.     Her parents agreed to allow her to come home temporarily to arrange for her stay at Timberline Knolls.

56.     Between Robinson's spring 2013 stay and the summer 2013, Timberline Knolls became an out-of-network provider.  There were no appropriate in-network facilities offered on Defendant's member website or offered by Defendant be telephone.

57.     A pre-service request was made, and Defendant and Timberline Knolls informed Robinson's mother that they believed treatment would be covered by the health care policy.

58.     Robinson arrived at Timberline Knolls on July 8, 2013.  Robinson was only able to refrain from alcohol and other substance use in the four days prior to arriving at Timberline Knolls because her mother provided 24-hour supervision, her friends refused

to buy her liquor, she had no car, no money, and the liquor store was too far away for her to walk to it.

59.     The admission notes provide that she met every one of the criteria for substance dependence (at least three needed): developed tolerance—a need for increased amounts of the substance to achieve intoxication or the desired effect; suffered withdrawal from a substance and/or using the same or similar substance to relieve or avoid withdrawal symptoms; taking the substance in larger amounts or over longer period of time than intended; persistent desire or unsuccessful efforts to stop, cut down or control substance use, spent a great deal of time in activities necessary to obtain, use or recover from the substance; given up or reduced, social, occupational or recreational activities due to substance use; continued the substance use despite knowledge of persistent or recurrent physical or psychological symptoms problems caused or made worse by the substance use.

60.     Robinson met the criteria for substance abuse (manifested by one or more): recurrent substance use resulting in failure to fulfill major role obligations at work, school or home; and recurrent substance use in physically hazardous situations.

61.     The admitting diagnoses included alcohol dependence, cannabis abuse, major depressive disorder, severe, recurrent, generalized anxiety disorder, and eating disorder.  Psychosocial and environmental problems were also noted, including problems with primary support group, problems related to social environment, educational problems, and occupational problems.

11

62.     Robinson's global assessment of functioning scale was 30 to 39, meaning major impairment in several areas, such as work or school, family relations, judgment, thinking or mood.

63.     Timberline Knolls notes state that Robinson began cutting herself with razors at the age of 13, and last cut herself in May 2013.

64.     During the four days prior to Robinson's arrival at Timberline Knolls, she experienced symptoms of withdrawal, including shakiness, headaches, and profuse sweating.

65.     A denial letter, authored by J. Lyndon Good, M.D., Associate Medical Director for United Behavioral Health, dated July 10, 2013, was sent to Robinson, stating that her care at Timberline Knolls would not be covered.

66.     The letter states the rationale for the decision is based on the review of the services Robinson was receiving, a review of the certificate of coverage, a review of UBH Level of Care Guideline and TCADA for residential treatment of substance disorder, and a live telephone interview with Dr. West, who was treating Robinson at Timberline Knolls.

67.     Dr. Good reasoned that care could continue with partial hospital providers and that Robinson was not at risk of dangerous withdrawal symptoms and did not have any medical or emotional conditions that required 24-hour monitoring.

68.     Dr. Good states that patients with substance use disorder should be treated in a level of care that is least restrictive and most likely to prove safe and effective.  He states residential rehabilitation is driven by the dominance of substance use in the

patient's daily life and by the absence of a support system and a safe substance-free environment.

69.     Dr. Good states the following also should be considered:

- A history of continued and severe substance use despite appropriate motivation and recent treatment in an intensive outpatient or partial hospital program;

- Risk of harm to self or others and/or pervasive impairment in functioning due to continued and severe substance use which prohibits treatment from occurring safely in a less restrictive environment.

- Risk of withdrawal symptoms, which cannot safely be managed without requiring 24-hour monitoring;

- Severe impairment in the patient's family or social support system such that the patient is likely to substances if not in 24-hour care.

70.     The denial letter failed to reference specific plan provisions on which the determination was based, as required by ERISA regulations.

71.     The denial letter failed to provide a description of additional material or information necessary for Robinson to perfect her claim and an explanation of why such material or information was necessary, as required by ERISA regulations.

72.     Robinson did not receive the denial letter for several days after the date of the letter.

73.     An urgent appeal request was made by Robinson's provider and decided by Defendant before Robinson received the denial letter and appeal information.

74.     The urgent appeal decision was made by letter dated July 12, 2013 from Malik Ahmed, M.D., Associate Medical Director for United Behavioral Health and the same physician who had authored the denial letter in April 2013.

75.     Dr. Ahmed reasoned that care could continue at a Partial Hospital setting, that Robinson was not having any withdrawal symptoms, had no thoughts of hurting herself, was medically stable, has a supportive family and did not need 24-hour monitoring.

76.     Dr. Ahmed provided the same criteria, as was used by Dr. Good, but added the following additional consideration:  withdrawal symptoms that do not compromise the patient's medical status, but are of extreme subjective severity accompanied by the lack of resources or functional social supports to manage the symptoms.

77.     Dr. Ahmed's letter failed to reference the specific plan provisions on which the benefit determination was based, as required by ERISA regulations.

78.     Dr. Ahmed's letter failed to inform Robinson that she was entitled to receive copies of all documents, records and other information relevant to her claim for benefits, as required by ERISA regulations.

79.     Dr. Ahmed's letter stated that it served as the final adverse determination, even though the health care policy provides there is a right to request a second level appeal.

80.     Defendant's criteria used in denying Robinson's claim is not the same as the criteria for residential rehabilitation under Defendant's Guideline.

81.     Dr. Ahmed's rationale is inconsistent with Defendant's case notes.

82.     After receiving the July 10, 2013 denial letter, Robinson's parents worked through the benefits administrator at Insperity Holdings, Inc., who contacted Defendant to request a reopening of Robinson's claim.

83.    A representative from Timberline Knolls also contacted Defendant to advocate for another appeal, informing Defendant that Dr. West had more detailed information about Robinson's diagnoses, living arrangements prior to Timberline Knolls, inability to follow through an impairment in functioning that would support residential treatment care.

84.    Defendant refused to permit another appeal and only offered the external appeal option.

85.    In late August, Robinson and her parents submitted to Defendant a request for external review.

86.    In the request for an external review, Robinson's parents stated Defendant may have received insufficient data during the initial telephonic claims interviews.  It also stated that Robinson's condition had deteriorated significantly between leaving Timberline Knolls on April 6, 2013 and her readmission on July 8, 2013.

87.    Prior to submitting the external review appeal, Robinson sent to Defendant a letter from Kerry Fox, M.D., psychiatrist located in Eden Prairie, Minnesota.  The letter states Dr. Fox has been Robinson's psychiatrist since October 2009.  Dr. Fox states that she does not believe Robinson can achieve sobriety and be mentally healthy without intensive intervention regarding her substance use and simultaneously addressing her anxiety and depression.

88.    Timberline Knolls and Insperity's benefit administrator contacted Defendant and requested that Defendant conduct a more thorough review.  Based on information and belief, Defendant refused to do so.

89.    As part of the request for an external review, Robinson submitted a significant amount of supporting evidence.

90.    The submission to Defendant included a letter from Robinson's parents addressed to Defendant and other parties providing a lengthy explanation as to why they believe Robinson required residential treatment.

91.    The submission also included a statement by Robinson explaining why she believed residential treatment was necessary, including that she was unemployed and living in an environment that enabled her drinking, the severity of her alcoholism (drinking about 15 drinks a day), and the pervasiveness and unmanageability of her depression and anxiety.

92.    The submission included a letter from Sarah Kelder, Clinical Psychologist at Timberline Knolls, in support of the residential treatment, stating that based on the chronicity and severity of Robinson's substance dependence and mood issues and her inability to successfully access outpatient care, she and her treatment team recommended residential care to interrupt and successfully abate Robinson's ongoing co-occurring disorders.

93.    The submission included a letter from Rachel Narow, Primary Therapist at Timberline Knolls, describing why residential treatment was necessary.  Ms. Naro stated given the nature and severity of Robinson's co-occurring disorders, the profound impact it had on her functioning, the unmanageability of her behaviors in a less structured setting, her inability to follow through with treatment recommendations and her medication regimen without supervision, the limited resources at her disposal, and a

16

social network that encouraged substance use, admission into residential treatment was clinically necessary.

94.    The submission included a letter from Donna Ulteig, Clinical Social Worker at Psychiatric Services, S.C. in Madison, Wisconsin.  Ms. Ulteig states that Robinson's functioning during her second academic year became problematic and she started the semester on academic probation.  She states Robinson's executive functioning further deteriorated and she was unable to take care of herself.

95.    The submission included a letter from Michael Miller, psychologist located in St. Paul, Minnesota.  The letter states that he has treated Robinson since March 2011. The letter states it is his clinical opinion based on current interventions attempted, that due to Robinson's continued difficulty and environments both at home as well as with peers, she is incapable of recovering without further intensive treatment in a restrictive behavioral environment.

96.    The submission included a letter from Caitlin Crowley, Robinson's roommate in Minneapolis, Minnesota.  Ms. Crowley describes why she was very concerned about Robinson's use of alcohol and requested her to move out effective June 1, 2013.

97.    The submission included a letter from Semone West, M.D., psychiatrist at Timberline Knolls.  Dr. West recommended that Robinson would benefit from continued residential care treatment to avoid relapse of symptoms and behaviors based on the chronicity and severity of her mental illness and failed stabilization of her symptoms at

lower level of care facilities. She describes that during Robinson's admission to Timberline Knolls, she appeared to be struggling in many areas of functioning.

98.    The submission included additional supporting evidence.

99.    An external review was conducted by True Decisions, Inc. located in Austin, Texas.

100.    True Decisions, Inc. upheld the denial of benefits. The explanation provided for the decision by True Decisions, Inc. was that no information was submitted regarding the patient being a danger to herself or others, no information was submitted regarding the patient expressing any thoughts of suicide ideation, the patient presented for admission in a sober state, the patient had a supportive family in place manifested by a stable home life, and the patient was noted to not have significant withdrawal symptoms.

101.    True Decisions, Inc.'s determination was not based on the health care policy or the Guideline used by Defendant.

102.    Although Robinson provided authorization for medical records with several providers outside of Timberline Knolls, neither Defendant nor True Decisions, Inc. obtained additional records.

103.    Robinson (through her parents) paid $2,400 out of pocket for the service April 3 – April 5, 2013, and $33,600 out of pocket for the service from July 8 – August 18, 2013.

## COUNT I

104.   Plaintiff restates and realleges the allegations in paragraphs 1 through 103 herein.

105.   Plaintiff is entitled to reimbursement for the healthcare benefits denied by Defendant.

106.   Defendant UnitedHealthcare's denial of health care benefits violates ERISA.  29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B).

107.   By reason of the foregoing, Plaintiff is entitled to judgment against Defendant for unpaid health care benefits and interest.

## COUNT II

108.   Plaintiff restates and realleges the allegations in 1 through 103 herein.

109.   Plaintiff has been forced to bring the instant action as a direct result of Defendant's violations.

110.   As a direct result of Defendants acts and failures, Plaintiff has incurred attorneys' fees and costs.  Plaintiff is entitled to recover his attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff  requests that the Court:

1.   Adjudicate that Plaintiff is entitled to the healthcare benefits which were denied by Defendant, as described above.

2.      Adjudicate that Defendant owes Plaintiff the benefits she is entitled to under the healthcare plan for the healthcare expenses from April 3 to April 6, 2013, and from July 8, 2013 to August 19, 2013, with interest.

3.      Award Plaintiff the costs, disbursements and other expenses of this litigation, and reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g), ERISA § 502(g).

4.      Award such additional and further relief as the Court may deem just and proper.

                              **HELLMUTH & JOHNSON PLLC**

Date: February 11, 2015            By:   __s/ Denise Yegge Tataryn_____
                                        Denise Y. Tataryn (179127)
                                        8050 West 78th Street
                                        Edina, MN 55439
                                        (952) 941-4005
                                        (952) 941-2337 (fax)
                                        E-mail: dtataryn@hjlawfirm.com

                                        **ATTORNEYS FOR PLAINTIFF
                                        EMILY ROBINSON**

## ACKNOWLEDGMENT

The undersigned acknowledges that pursuant to Minn. Stat. § 549.211, costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find that the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.


Date:  February 11, 2015          By:  ___/s/ Denise Yegge Tataryn_____
                                       Denise Y. Tataryn (179127)
                                       8050 West 78th Street
                                       Edina, MN 55439
                                       (952) 941-4005
                                       (952) 941-2337 (fax)
                                       E-mail: dtataryn@hjlawfirm.com